IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MY PAD PROPERTIES LLC, | § § § | |
| *Plaintiff,* | § § | SA-24-CV-00512-FB-ESC |
| vs. | § § § | |
| STATE FARM LLOYDS, | § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the following dispositive motions: Plaintiff's Motion for Partial Summary Judgment [#27] and Defendant's Motion for Summary Judgment [#28]. All dispositive pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#4]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned will recommend Defendant's Motion for Summary Judgment [#28] be **GRANTED**. Therefore, Plaintiff's Motion for Partial Summary Judgment [#27] should be **DISMISSED AS MOOT**.

## I. Background

This first-party insurance dispute arises out of a claim for damage to a rental property owned by Plaintiff My Pad Properties LLC ("My Pad"). When the tenant occupying the property moved out on July 20, 2023, My Pad allegedly found damage it believed to be the result of vandalism and/or malicious mischief and filed a claim with Defendant State Farm Lloyds ("State

1

Farm"), its insurer, regarding broken doors, holes in the walls, a vandalized A/C unit, and water damage throughout the property. My Pad represents that the water damage was the result of an intentional tub overflow by either its tenant or another individual engaged in vandalism. And My Pad contends that the other damage was also the result of vandalism. State Farm inspected the property and determined the damage was excluded by the terms of the policy because some damage was due to a water line leak pre-dating the policy period, and the remainder of the damage was attributable to wear and tear or lack of maintenance, which are causes of damage excluded from coverage by the policy. My Pad filed this suit, alleging that State Farm wrongly denied its insurance claim and asserting causes of action for breach of contract, violations of the Texas Insurance Code, and breach of the duty of good faith and fair dealing.

My Pad has filed a motion for partial summary judgment, arguing that its claim is covered under the plain language of the insurance policy and that State Farm's denial of its claim, misrepresentation of the policy's terms, and failure to fully investigate My Pad's claim violate contractual and extracontractual duties under Texas law as a matter of law. My Pad requests partial summary judgment on liability and a trial to determine which damages were caused by covered perils under the insurance policy.

State Farm has filed a cross-motion for summary judgment, contending that My Pad cannot segregate damages between losses that are allegedly covered by the insurance policy and losses attributable to excluded causes or causes occurring outside of the policy period, such as the water damage. In the alternative, State Farm argues it is entitled to partial summary judgment on My Pad's extracontractual claims because the evidence demonstrates there is a bona fide dispute as to the insurance claim. Responses and replies have been filed to both motions. The motions are ripe for the Court's review.

2

## II.   Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion" and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

When parties file cross-motions for summary judgment, the Court reviews "each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror

could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174 (citing *Celotex Corp.* 477 U.S. at 322).

### III.    Summary Judgment Record

The summary-judgment record sets forth the following disputed and undisputed facts. State Farm issued Rental Dwelling Policy No. 90-E4-F406-0 ("the Policy") to My Pad, insuring My Pad's rental property located at 5514 Little Creek Street, San Antonio, Texas, from June 4, 2023, to June 4, 2024.  (Policy [#27-1], at 2; Lee Decl. [#28-1], at ¶ 2.)

The Policy provides coverage for "property damage" to a covered dwelling.  (Policy [#27-1], at 22.)  "Property damage" is defined as "physical damage to or destruction of tangible property," but does not include damages due to theft or conversion.  *Id.*  The following portion of the Policy is relevant to My Pad's vandalism claim, including losses claimed based on water damage throughout the apartment, as well as State Farm's denial of My Pad's claim based on wear, tear, and lack of maintenance:

**SECTION I – LOSSES NOT INSURED**

1.  We do not insure for loss to the property described in Coverage A and Coverage B either consisting of, or directly and immediately caused by, one or more of the following:. . .

    g.    vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;. . .

    i.    wear, tear, marring, scratching, deterioration, inherent vice, latent defect and mechanical breakdown;. . .

2.  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss. . .

    c.  **Water damage**, meaning . . .

        (2) water which backs up through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any

4

other system designed to remove subsurface water which is drained from the foundation area; or

    (3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure. . .

3.  We do not insure under any coverage for any loss consisting of one or more of the terms below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:. . .

    b.  Defect, weakness, inadequacy, fault or unsoundness in:. . .

        (4) Maintenance;

        of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.

(Policy [#27-1], at 25-26.)

Victor Granados leased the rental property at issue from My Pad for several years predating the policy period. (Granados Dep. [#27-5], at 10:14-15.) He vacated the unit on July 20, 2023, approximately six weeks after the Policy was issued. (*Id.* at 87:10.) Evan Wright, My Pad's property manager, inspected the apartment shortly after Granados moved out. (Wright Dep. [#27-6], at 17:17-25.) When Wright first inspected the property, he noted that the unit was dirty but did not identify any significant damage to the apartment. (*Id.* at 19:5-20.) Wright later returned to the property to inspect its condition and begin demolition for make-ready repairs for future rental. (*Id.* at 19:16-21:2.) During this inspection, Wright noticed holes in the doors, a broken bathtub, broken windows, and significant water damage. (*Id.* at 20:23-21:2.) Demolition for make-ready repairs revealed extensive water damage throughout the apartment, including the kitchen, living room, mechanical closet, and laundry room, reaching throughout "most of the front of the house and the bath and back." (*Id.* at 77:8-12.) The A/C thermostat was also missing from the apartment when Wright began make-ready repairs, but Wright does not know when it was removed. (*Id.* at 66:17-20.) At some point after Granados moved out and before

5

My Pad began demolition and repairs, Wright took photos of the apartment.  (*Id.* at 33:22-35:17.) The photographs show broken doors and doors with holes in them, a missing valve on the bathtub, water damage to floors and baseboards, small holes in the wall, and other damage to walls and flooring.  (Wright Photographs [#28-2], 80-121.)

Wright sent photographs of the damage to Peter Donbavand, My Pad's owner.  (*Id.* at 35:16-17.)  Donbavand then told Wright to stop repairs and submit an insurance claim for the damage.  (*Id.*)  On July 23, 2023, State Farm received a claim from My Pad.  (Lee Decl. [#28-1], at ¶ 5.)  The claim reported a loss for "Crime/Vandalism."  (*Id.*)  The claim log indicates the claim was made for "damage throughout the home."  (Claim Log [#28-1], 35.)  Wright later submitted a police report on August 31, 2023, claiming that the property had been vandalized. (Police Report, [#28-1] at 357.)

State Farm assigned My Pad's claim to in-office adjuster Breanna Walker and field adjuster Vivian Garza.  (State Farm Emails [#28-1], at 182.)  Garza inspected the rental property on September 15, 2023.  (Claim File [#28-1], at 31.)  The adjuster's notes from her inspection indicate broken windows, doors, and sheetrock.  (*Id.* at 32.)  The adjuster's notes state there was damage to all rooms in the apartment "consistent with hard living/wear/tear."  (*Id.*)  Her notes also refer to water damage to drywall and cabinets, including visible rot to kitchen cabinets, that may provide the basis for a separate claim.  (*Id.*; Lee Decl. [#28-1], at ¶ 8.)  The adjuster took numerous photos of the apartment upon inspection.  (State Farm Photographs [#28-1], at 185-290.)  The adjuster's photos—taken after demolition began—showed holes in doors, broken doors, broken windows, water damage, extensive damage to floorboards and walls, and other damage. *Id.*

State Farm denied My Pad's claim on September 19, 2023, concluding that the damage was the result of wear, tear, and lack of maintenance. (Denial Ltr. [#28-1], at 292.) The denial letter concluded that these types of damage are losses not insured. (*Id*.) After receiving the denial letter, My Pad hired Logan Rodgers to serve as a public adjuster for its claim. (Ltr. of Rep. [#28-2], at 158.) Rodgers determined that My Pad's losses—which, according to his estimate, totaled $86,386—were caused by vandalism that occurred on July 21, 2023, the day after Granados moved out. (Notice to Insurer [#28-2], at 162.) State Farm did not change its decision to deny the insurance claim after reviewing Rodgers's estimate, again stating that the damage was "consistent with hard living" and would not be a covered claim. (Walker Email to Rodgers [#28-1], at 361.)

Thereafter, My Pad retained counsel, sent a demand letter to State Farm, and ultimately filed suit on April 9, 2024. My Pad also designated Logan Rodgers as a non-retained expert to testify as to his adjustment of the claim, his observations at the property, his communications with State Farm's representatives during inspections, "and his belief as to whether the policy terms are applicable to the damage observed at the property." (Pl.'s Expert Designations [#20-1], at 85.) State Farm moved to strike the expert opinion of Rodgers on causation. The undersigned granted the motion, ordering that Rodgers' testimony that the damage to Plaintiff's property was caused by vandalism be stricken from the summary-judgment record for lack of reliability. (Order [#32], at 7.) The undersigned found, however, that Rodgers may testify regarding the alleged date of loss, his inspection of the property, the scope of damage he observed, and the details of his estimates for what it would cost to repair damage to the property. (*Id.*) The undersigned has thus disregarded the stricken portion of Rodgers's testimony in evaluating the motions for summary judgment.

The cause of the extensive damage that My Pad's property manager and State Farm's adjuster documented when inspecting the apartment after Granados moved out remains in dispute. According to Granados, the former tenant, significant water damage occurred in the apartment during and prior to his tenancy. Granados testified that a foundation leak flooded the property, which he reported to My Pad on December 18, 2022 (well before the policy period). (Granados Dep. [#28-2], at 40:22-42:3.) According to Granados, the leak was patched in late February 2023, but My Pad did not replace the flooring. (*Id.* at 60:25-61:4.) Granados did not observe any further water damage caused by the foundation leak after this repair. (*Id.*) Photos that Granados took during his tenancy show water damage to door frames and dividing walls similar to the water damage documented by My Pad's property manager and State Farm's adjuster. (Granados Photographs [#28-2], at 32-46.)

As for other water damage in other areas of the apartment, Granados testified that the overflow valve on the bathtub in the apartment was removed prior to his tenancy and never replaced. (Granados Dep. [#28-2], at 27:11-28:18, 37:9-16, 89:9-11.) Granados testified that he never caused the tub to overflow, but repeated pipe leakage during his tenancy caused water damage in the bathroom and hallway. (*Id.*) He also testified that he did not remove the A/C unit thermostat from the wall or damage the A/C unit; rather, the unit was already broken when he moved into the apartment. (*Id.* at 26:20-23.) Granados further testified that he did not make any holes or cracks in the apartment doors, break any windows, or make holes in the walls larger than nail holes to hang picture frames. (*Id.* at 26:6-28:1, 65:9-25.) Photos that Granados took during his tenancy, some of which were taken in July 2022 and February 2023 (prior to the policy period), show damage to baseboards, a crack in the kitchen wall, and a broken bedroom window that match damage documented by My Pad's property manager and State Farm's

8

adjuster. (Granados Photographs [#28-2], at 32-46.) When presented with the photos that Wright and Garza took during their inspections of the apartment, Granados testified that he did not recognize the holes in the walls or cracks and holes in the doors. (Granados Dep. [#28-2], at 65:9-25; 93:4-11.) Granados thus denied damaging the property and opined that the damage depicted was beyond the scope of normal wear and tear that a tenant should cause while living at a property. (*Id.* at 16:14-18:4; 21:21-23:25; 26:13-28:7; 94:2-9.)

Meanwhile, My Pad owner Peter Donbavand testified that all damage was caused by vandalism. (March 2025 Donbavand Dep. [#28-2], at 22:14-23:5, 36:24-37:22.) In his deposition, he does not claim that he witnessed any vandalism himself or that he is aware that anyone did. He infers the cause from the damage itself, testifying that in his opinion, the damage to walls and doors was beyond normal wear and tear and therefore reflects intentional acts by Granados or another person. (*Id.* at 36:24-37:22; 134:18-19.) Donbavand also asserted that a large portion of the water damage in the apartment was caused by an intentional tub overflow after the tenant took off the overflow valve. (*Id.* at 114:4-16.) Again, he does not claim in his testimony that he witnessed the tub overflow or was made aware of any tub overflow. His assertions are again based on his inference from the damage. Property manager Wright also testified about the damage. He conceded that he could not say whether the damage he observed during his inspection of the apartment after Granados moved out was caused by vandalism. (Wright Dep. [#27-6], 77:5-12.) Wright also testified that he did not know how long the overflow valve had been missing. (*Id.* at 39:4-11.) Wright did, however, opine that the apartment was damaged "way above and beyond" normal wear and tear. (*Id.* 73:25-74:5.)

Relatedly, My Pad sent Granados a collection letter explaining it was withholding Granados's security deposit and seeking additional charges for damages that he caused in excess

of normal wear and tear.  (Deposit Letter [#28-2], at 77-78.)  The collection letter includes a long list of itemized damages, including but not limited to missing flooring, doors, broken sheetrock, holes in doors, broken windows, and a broken bathtub.  *(Id.)*  The collection letter does not identify the causes of damage (i.e., it does not attempt to separate damage caused by alleged vandalism that may have occurred after Granados moved out from damage allegedly caused by Granados's use or misuse of the apartment).  *Id.*

## V.    Analysis

My Pad seeks partial summary judgment on its breach-of-contract and extracontractual claims, arguing that no genuine dispute of material fact exists as to coverage or as to State Farm's bad faith in investigating and adjudicating its claim.  State Farm seeks summary judgment on all of My Pad's claims.  Texas law governs My Pad's breach of contract and extracontractual claims because this case arises under the Court's diversity jurisdiction.  *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 856 (5th Cir. 2014).  For the following reasons, the undersigned recommends that State Farm's motion be granted.  My Pad's motion should therefore be dismissed as moot.

**A.    State Farm is entitled to summary judgment on My Pad's breach-of-contract claim because My Pad has failed to offer evidence by which a jury could segregate covered and non-covered losses.**

State Farm has not moved for summary judgment based on the application of its policy exclusions as a matter of law.  Instead, State Farm argues that My Pad's breach-of-contract claim fails because there is no evidence from which a jury could segregate damages between covered and non-covered losses as required under the concurrent causation doctrine.

Under the concurrent causation doctrine, "when covered and non-covered perils combine to create a loss, the insured is entitled to recover that portion of the damage caused solely by the

covered peril." *Advanced Indicator and Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 476-77 (5th Cir. 2022) (citing *Dallas Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 222 (Tex. App.—Dallas 2015, no pet.) (collecting cases)).   "Because an insured can recover only for covered events, the burden of segregating the damage attributable solely to the covered event is a coverage issue for which the insured carries the burden of proof.  Failure to segregate covered and noncovered perils is fatal to recovery."  *Id.*  (citation omitted).  An insured may carry its burden under the concurrent causation doctrine by putting forth evidence demonstrating that the loss came solely from a covered cause, or by putting forth evidence by which a jury may reasonably segregate covered and non-covered losses.  *Id.* (citation omitted).  An insured's failure to meet its burden of segregating covered and non-covered losses is fatal to its claim.  *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018).

The Fifth Circuit has recognized that "considerable confusion exists over when and how courts should apply this doctrine."  *Hub Texas, LLC v. Arch Specialty Ins. Co.*, No. 5:21-CV-180-H-BQ, 2023 WL 11859631, at *9 (N.D. Tex. Mar. 21, 2023) (citing *Overstreet v. Allstate Vehicle and Prop. Insur. Co.*, 34 F.4th 496 (5th Cir. 2022); *Frymire Home Servs., Inc. v. Ohio Security Insur. Co.*, 12 F.4th 467 (5th Cir. 2021)).  On two occasions, the Fifth Circuit has certified three questions to the Texas Supreme Court due to the "substantial gaps in the concurrent causation doctrine" as to its application and accompanying burden of proof.  *Id.* These questions remain unanswered because the Fifth Circuit cases settled before the Texas Supreme Court could render its opinion.  *Id.*  However, the Fifth Circuit has since held that the doctrine does not preclude recovery where the insured puts forth evidence demonstrating that *all* of the claimed damage resulted from a covered cause.  *Id.* at *10 (citing *Advanced Indicator*, 50

F.4th at 477). The question is therefore whether My Pad has put forth sufficient evidence from which a jury could find: (1) that all of the claimed damage to the Property occurred during the policy period and was not attributable to wear and tear or lack of maintenance (and the concurrent causation doctrine is therefore not implicated), *or* (2) if some of the claimed damage pre-dated the policy period or was attributable to wear and tear or lack of maintenance, how to segregate covered and non-covered losses. *Advanced Indicator*, 50 F.4th at 477.

The undersigned agrees with State Farm that My Pad has failed to put forth sufficient evidence from which a jury could find that all the damage depicted in the various photographs and described in State Farm's insurance claim occurred during the policy period. This is true of both the water damage and non-water-related damage. As to the water damage, there is undisputed evidence that the foundation leak reported on December 18, 2022, caused significant water damage to the apartment. (Granados Dep. [#28-2], at 40:22-42:3.) Photos that Granados took during his tenancy also show water damage to door frames and dividing walls. (Granados Photographs [#28-2], at 32-46.) As to other damage, other photos by Granados—some of which were taken in July 2022 and February 2023, prior to the policy period—show damage to baseboards, a crack in the kitchen wall, and a broken bedroom window that match damage documented by My Pad's property manager and State Farm's adjuster. (Granados Photographs [#28-2], at 32-46.) The water damage attributable to the December 2022 foundation leak therefore occurred outside the policy period, as did other kinds of damage claimed by My Pad. My Pad has thus failed to prove that the concurrent causation doctrine is not implicated in this case by failing to put forth sufficient evidence from which a jury could find that all the claimed damages occurred during the policy period. *Advanced Indicator*, 50 F.4th at 477.

The question that remains is whether there is evidence from which a factfinder could segregate covered losses from non-covered losses. Circumstantial evidence may suffice to meet an insured's burden; expert allocation of damages between covered and non-covered losses is not required. *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993) (citing *United States Fidelity and Guar. Co. v. Morgan*, 399 S.W.2d 537, 540 (Tex. 1966)).

As to the water damage, the question is whether My Pad has offered evidence by which a jury could segregate losses caused by the foundation leak with a possible pipe leak during Granados's tenancy from damage caused by the alleged tub overflow—assuming vandalism is found to be at issue at trial. The undersigned agrees with State Farm that there is no such evidence. The Court struck the only causation evidence regarding the water damage (namely, public adjuster Rodgers's testimony). Even if the jury believed that vandalism occurred and contributed to the water damage, there is no basis from which a jury could segregate the various causes of the damage or the extent of damage attributable to a covered loss. The concurrent causation doctrine thus bars My Pad's recovery for losses caused by water damage.

As to the other damage, the question is whether a jury could segregate losses that occurred during Granados's tenancy before the Policy took effect from damage that occurred after he moved out due to the alleged vandalism. My Pad does not assert any arguments on this point in its response to State Farm's motion, instead maintaining that all losses stemmed from a covered cause. The undersigned finds that, viewing the evidence in the light most favorable to My Pad, a jury could not reasonably segregate damages. My Pad has offered no expert testimony as to the cause of the claimed damage. Neither does it identify any other evidence that satisfies its burden here. The record includes evidence of the itemized list of damages that My Pad sent its former tenant in late August to charge him in excess of his security deposit, but that

letter fails to distinguish between damages caused by alleged vandalism and those caused by the tenant's use or misuse of the apartment. (Deposit Letter [#28-2], at 77-78; Wright Dep. [#28-2], at 30:4-33:8.) Although the former tenant testified that he did not recognize certain damage documented by My Pad's property manager, his statement that he "did not cause any damages" does not provide a basis for a jury to segregate between damages that were caused from his use or misuse of the apartment during his tenancy (prior to the policy period) from the damages that may have occurred after. (Granados Dep. [#28-2], at 65:9-25; 93:4-11.) My Pad has therefore failed to offer a basis for a jury to reasonably determine the extent of losses covered by alleged vandalism. *Advanced Indicator*, 50 F.4th at 477.

**B.**      **State Farm is entitled to summary judgment on My Pad's extracontractual claims.**

State Farm contends that because My Pad cannot prevail on its breach-of-contract claim, it is also entitled to summary judgment on My Pad's extracontractual claims. MyPad has asserted extracontractual claims under Chapter 541 of the Texas Insurance Code. An insured "cannot recover *any* damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 500 (Tex. 2018) (citing *Provident American Ins. Co. v. Castañeda*, 988 S.W.2d 189, 198 (Tex. 1998)). Here, the Court should find that My Pad cannot show its right to benefits under the policy. Therefore, unless My Pad can show an injury independent of its right to policy benefits, the general rule will apply and preclude recovery under extracontractual claims. *Id.* at 499-501.

My Pad does not attempt to assert an independent injury. It proceeds on an entitlement-to-benefits theory, arguing that State Farm acted in bad faith in its investigation and settlement of My Pad's claim. Because My Pad has failed to defeat State Farm's motion for summary

14

judgment on its breach-of-contract claim and has failed to show its extracontractual claims are based on an independent injury, the Court should grant summary judgment for State Farm on My Pad's extracontractual claims. *Id.*

## VI.   Conclusion and Recommendation

Having considered the motions and responses thereto, the pleadings, the summary judgment record, and the governing law, State Farm has shown it is entitled to summary judgment on all claims in this lawsuit. Therefore, the undersigned recommends the following:

- Defendant State Farm Lloyds's Motion for Summary Judgment [#28] be **GRANTED**; **and**

- Plaintiff My Pad Properties LLC's Motion for Partial Summary Judgment [#27] be **DISMISSED AS MOOT.**

## VII.   Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985);

15

*Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 2nd day of March, 2026.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE